IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


CATHARYN BURTON,                                                    PLAINTIFF
o/b/o D.T.H., a minor


v.                              Case No. 4:04-cv-4009


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                     DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Catharyn Burton, brings this action, on behalf of her grandson D.T.H. a minor,

pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the

Social Security Administration (Commissioner) denying her grandson's claims for a period of

disability, and supplemental security income (SSI) childhood disability benefits under the provisions

of Title XVI of the Social Security Act (Act), 42 U.S.C. § 1382c(a)(3).  The parties have consented

to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including

conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment

proceedings.  (Doc. No. 3).[1]  Pursuant to this authority, the Court issues this memorandum opinion

and orders the entry of a final judgment in this matter.

## 1. Procedural Background:

Plaintiff protectively filed an application for SSI, on behalf of her grandson, D.T.H. a minor,

on July 24, 1998, alleging an onset date of July 1, 1998.  (Tr. 34, 59-64).  The alleged impairment

---

[1] The docket numbers for this case are referenced by the designation "Doc. No."  The transcript pages for
this case are referenced by the designation "Tr."

1

was reactive airway disease with chronic pulmonary insufficiency.  (Tr. 34).  D.T.H. was found to

be disabled, meeting the criteria of Listing 103.02F(1) for chronic pulmonary insufficiency, with the

disability beginning July 1, 1998.  (Tr. 34, 41-45).  D.T.H.'s  eligibility for benefits was subject to

periodic review.  *See* 20 C.F.R. § 416.994(a).  In October 2001, D.T.H's case was reevaluated under

the periodic review process to determine if he was still eligible for benefits.  It was determined his

disability ceased as of October 1, 2001, with benefits ending December 1, 2001, due to medical

improvement in his respiratory impairment that had been previously found to be disabling.  (Tr. 35-

37, 46-51).

Plaintiff appealed this decision to an ALJ, who issued an unfavorable decision on January 30,

2003, confirming D.T.H. had experienced medical improvement and was no longer disabled as of

October 1, 2001.  (Tr. 12-19).  Upon denial of review by the Appeals Council, Plaintiff appealed this

decision to the United States District Court for the Western District of Arkansas on January 15,

2004. (Doc. No 1).  While this claim was pending, Plaintiff protectively filed a second application

for SSI benefits on January 22, 2004, alleging a disability onset of January 20, 2004, due to attention

deficit hyperactivity disorder (ADHD), a sleep disorder, and asthma, which the Agency denied at the

initial and reconsideration levels.  (Tr. 257-258, 301-308, 340-355).

On January 6, 2005, U.S. Magistrate Judge Bobby E. Shepherd remanded the disability

cessation case pursuant to sentence six, 42 U.S.C. § 405(g) for further administrative proceedings

to consider additional evidence that was not available at the time of the previous decision.  (Doc. No.

8, Tr.  286-300).  A new hearing was held on November 15, 2005, for consideration of both D.T.H.'s

continued eligibility for benefits granted under his July 1998 SSI application and his recent January

2004 SSI application.  The Plaintiff and D.T.H. were present and  represented by counsel, Charles

Barnette, at the hearing.   (Tr. 476-490).   On March 18, 2006, the ALJ issued a decision affirming

the cessation of disability benefits as of October 1, 2001, and finding D.T.H. not disabled.   (Tr.

469-475).   However, due to a malfunction of the tape recording of the November 15, 2005 hearing,

the Appeals Council remanded the matter back to the ALJ for another hearing.   (Tr. 491-493).

On September 19, 2006, The ALJ  held a second hearing to consider the July 1998 and

January 2004 SSI applications.   The Plaintiff and D.T.H. were present and  represented by counsel,

Charles Barnette, at this hearing.   (Tr. 509-527).   On January 23, 2007, the ALJ issued an

unfavorable decision finding D.T.H. had not been under a disability within the meaning of the Act

at any time since October 1, 2001, and therefore, D.T.H's disability ceased as of October 1, 2001.

(Tr. 257-270).   After the Appeals Council denied Plaintiff's request for review, the ALJ's January

23, 2007 decision, became the Commissioner's final administrative decision for judicial review

before this Court.   (Tr. 251-252).   On April 30, 2007, an Order was entered reopening this case on

this Court's docket.   (Doc. No. 11).   Both parties have submitted briefs and this matter is ready for

decision.

## 2. Applicable Law:

In reviewing this case, this Court is required to determine whether the Commissioner's

findings are supported by substantial evidence on the record as a whole.   *See* 42 U.S.C. § 405(g)

(2007); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002).   Substantial evidence is less than

a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to

support the Commissioner's decision.   *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001).

As long as there is substantial evidence in the record that supports the Commissioner's decision, the

Court may not reverse it simply because substantial evidence exists in the record that would have

supported a contrary outcome or because the Court would have decided the case differently.  *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001).  If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and prevents him or her from engaging in any substantial gainful activity.  *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382(3)(c).  A Plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine if a child is disabled and eligible for SSI benefits, the Commissioner will make a three-step sequential evaluation of the child's alleged impairments.  *See* 20 C.F.R. § 416.924. First, the Commissioner will determine whether the child is engaged in a substantial gainful activity. *See* 20 C.F.R. § 416.924(b).  If the child is not engaging in substantial gainful activity, the evaluation continues to step two where the Commissioner will determine whether the child's alleged impairment causes severe functional limitations.  If the child's impairments, singularly or in combination, cause only minimal limitations, the Commissioner will not consider the impairments severe, and will find the child not disabled.  *See* 20 C.F.R. § 416.924(c).  If the child's impairments

4

are severe, the Commissioner will evaluate them to determine whether they meet, medically equal, or functionally equal in severity a listed impairment.  *See* 20 C.F.R. § 416.924(d).  In order to functionally equal a listed impairment, the child's impairment must result in marked limitations in two domains of functioning, or an extreme limitation in one domain.  *See* 20 C.F.R. § 416.926a(a). The relevant domains of functioning are: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating With Others; (4) Moving About and Manipulating Objects; (5) Caring For Yourself; and (6) Health and Physical Well-being.  *See* 20 C.F.R. § 416.926a(b)(1).  If the child does not have an impairment or combination of impairments that medically meets or equals a listed impairment, or is functionally equal in severity to a listed impairment, the Commissioner will find the child not disabled.

**3.  Discussion:**

The Plaintiff appealed the decision of the Commissioner finding her minor grandson not disabled.  She claims substantial evidence does not support the ALJ's decision that D.T.H. had a medical improvement of his previously determined disability, and the ALJ erred by not finding D.T.H.  had an impairment that was functionally equal in severity to a listed impairment.  The Defendant argues substantial evidence supports the ALJ's finding that D.T.H.'s condition had medically improved and, D.T.H. did not have an impairment that meet, medically equaled, or was functionally equal in severity to a listed impairment.

The ALJ found D.T.H. had a medical improvement in his condition which had previously been found disabling, (Tr. 268) and, D.T.H. did not have an impairment or combination of impairments that met a listed impairment, nor did D.T.H. have an impairment or combination of

impairments that medically or functionally equaled a listed impairment. (Tr. 269). I find substantial evidence supports these findings of the ALJ that D.T.H. is no longer under a disability as of October 1, 2001, or anytime since thereafter.

**A. Medical Improvement**

D.T.H. was found to be disabled, meeting the criteria of Listing 103.02F(1) for chronic pulmonary insufficiency, with the disability beginning July 1, 1998. (Tr. 34, 41-45). D.T.H.'s eligibility for benefits was subject to periodic review. *See* 20 C.F.R. § 416.994(a). The ALJ followed the three-step sequential evaluation process for determining continued eligibility for a disabled child's benefits, which includes the following steps: (1) has there been a medical improvement; (2) do the impairments originally found to be disabling still meet or equal the listing originally met or equaled; and (3) is the child currently disabled. (Tr. 259-268). *See* 20 C.F.R. § 416.994a(b).

Medical improvement is defined as a decrease in the medical severity of the child's impairments which were present at the time of the most recent favorable decision that the child was disabled. *See* 20 C.F.R. § 416.994(b)(1). To determine medical improvement, the ALJ must compare a claimant's level of functioning at the present time with the level of functioning at the time of the most recent favorable disability award. *See* 20 C.F.R. § 416.994(b)(1). In this case, the date of the most recent favorable disability award was the January 21, 1999 decision of the Disability Hearing Officer. (Tr. 41-45).

On January 21, 1999, it was determined D.T.H.'s reactive airway disease met the criteria of Listing 103.02F(1) for chronic pulmonary insufficiency with an onset date of July 1, 1998. (Tr. 34).

6

Listing 103.02F(1) requires a showing of chronic pulmonary insufficiency with two required hospital admissions (each longer than 24 hours) within a six-month period for recurrent lower respiratory tract infections or acute respiratory distress associated with chronic wheezing or chronic respiratory distress. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 103.02F(1). When this determination was made, Plaintiff had documented two multi-day hospital admissions D.T.H. had for bronchiolitis with respiratory distress in July 1998 and December 1998. (Tr. 213, 218-219, 223- 224, 259).

The current medical evidence indicates D.T.H. had required emergency room treatment on only two occasions in the years since the determination that his disability ceased on October 1, 2001, and only one of these visits was for asthma. (Tr. 432-438). In September 23, 2002, D.T.H. was seen at the Wadley Regional Medical Center emergency room and was treated for an earache. (Tr. 431-434). On August 3, 2003, D.T.H. was again seen at the Wadley Regional Medical Center emergency room and was treated for his asthma. (Tr. 435-438). Neither of these incidents required a hospital admission over 24 hours.

Additional medical evidence supports the ALJ's finding of a medical improvement. Dr. Mark Wright indicated on June 7 and October 22, 2001 that D.T.H. was "doing well" on medications. (Tr. 174-175). Also, at D.T.H.'s four-year check up on October 22, 2001, Dr. Wright reported that D.T.H. experienced no wheezing, coughing, or shortness of breath, and his lungs were clear. (Tr. 174). On November 28, 2001, D.T.H. obtained a refill of the Albuterol inhaler. (Tr. 173). There was no further record of treatment from Dr. Wright until January 15, 2003, when Plaintiff sought a refill of the Albuterol inhaler. (Tr. 449). These records indicate D.T.H. had not needed the inhaler for the past two months. (Tr. 449). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *See Raney v. Barnhart*, 396 F.3d 1007, 1010

7

(8th Cir. 2005).

I find substantial evidence supports the ALJ's finding that D.T.H. experienced a medical improvement in his reactive airway disease, since the January 21, 1999 favorable determination, and the condition no longer met or equaled Listing 103.02F(1).

### B. Current Disability

In assessing continuing disability there must be a determination of whether a claimant is currently disabled under any Listing. *See* 20 C.F.R. § 416.994a(b)(3). The ALJ must consider all impairments the child now has, including any he did not have at the time of the most recent favorable determination, or that were not considered at that time. *See* 20 C.F.R. § 416.994a(b)(3). The ALJ must apply a three-step sequential evaluation process in determining the disability of a child. *See* 20 C.F.R. §§ 416.924.

The ALJ must first decide if the child is engaged in a substantial gainful activity. *See* 20 C.F.R. § 416.924(b). D.T.H. was nine years old at the time of the ALJ's decision and the ALJ correctly found that he was not engaged in substantial gainful activity. (Tr. 259-260, 514). The ALJ must then determine if the child's alleged impairments are "severe" within the meaning of the Act. An impairment is "severe" if it causes more than a minimal degree of limitation in the child's adaptive functioning ability. *See* 20 C.F.R. § 416.924(c). The ALJ found D.T.H. had severe impairments of asthma; a moderate articulation speech delay; attention deficit hyperactivity disorder (ADHD); oppositional defiant disorder; and a sleeping disorder. (Tr. 260). However, the mere presence of an impairment does not establish disability. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). If "severe" impairments are found, the ALJ must then proceed to the final step to

8

determine if D.T.H.'s impairments, singly or in combination, were so severe as to meet, medically equal, or functionally equal the requirements of a Listing. *See* 20 C.F.R. § 416.924(d). The ALJ found D.T.H.'s impairments did not meet or equal a listed impairment, nor did the impairments functionally equal the requirements of a listing. (Tr. 260-270). I find substantial evidence supports these findings of the ALJ.

In order to equal a Listing, the impairment must meet all of the specified criteria for that particular listing. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. An impairment medically equals a Listing if the medical findings are at least equal in severity and duration to the listed findings. *See* 20 C.F.R. § 416.926. Medical equivalence must be based on medical findings. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.926(b). In this matter, the ALJ evaluated the D.T.H.'s severe impairments under Listings 103.02F Chronic Pulmonary Insufficiency, 111.09 Communication Impairment, 112.08 Personality Disorder, and 112.11 ADHD. (Tr. 260-262).

The ALJ reviewed all the medical evidence concerning D.T.H's history of asthma and reactive airway disease and found because DTH had required only one emergency room visit and no extended inpatient hospital stays for respiratory problems since 1998, D.T.H did not meet or medically equal Listing 103.02F for Chronic Pulmonary Insufficiency. (Tr. 259, 435-438). I find substantial evidence supports the ALJ's finding that D.T.H's respiratory condition did not meet or equal listing 103.02F for Chronic Pulmonary Insufficiency and was reasonably controlled with treatment. Impairments that are controllable or amenable to treatment are not disabling. *See Hutton v. Apfel*, 175 F.3d at 651, 655 (8ᵗʰ Cir. 1999).

The ALJ evaluated D.T.H's moderate articulation speech delay under Listing 111.09

9

Communication Impairment.  (Tr. 260-261).  Listing 111.09 requires evidence of a communication impairment associated with a documented neurological disorder and one of the following: (A) a documented speech deficit which significantly affects the clarity and content of the speech; or (B) a documented comprehension deficit resulting in ineffective verbal communication for age; or (C) an impairment of hearing as described under Listing 102.08.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 111.09.

In this case there is no documented medical evidence establishing a  neurological disorder as required under this Listing.  Further, substantial evidence supports the ALJ's finding that D.T.H's moderate articulation delay did not significantly affect the clarity and content of his speech as required under part A of Listing 111.09.   A speech and language evaluation was performed by the Texarkana Arkansas School District on May 13, 2003.  This evaluation indicated D.T.H. had a moderate articulation delay in conversation speech.   Speech pathologist Becky Pendergraft, recommended speech therapy.  (Tr. 337-338).  The evaluation indicated all other speech and language skills were within normal limits.  (Tr. 338).  As a result, D.T.H. did not meet the criteria of part A for Listing 111.09.  Further, there was no evidence showing a comprehension deficit on the part of D.T.H. as required under part B of listing 111.09.  D.T.H. demonstrated a "low average" of intellectual functioning on the evaluation conducted by the Texarkana Arkansas School District.  (Tr. 336, 441, 508).  Finally, there was no evidence of a hearing impairment as required under part C of listing 111.09.  A hearing test, performed on November 1, 2002 by the Texarkana Arkansas School District, was within normal limits.  (Tr. 332-333).

I therefore find substantial evidence supports the ALJ's finding that D.T.H's moderate articulation delay did not meet or medically equal  Listing 111.09.

The evaluation for D.T.H's oppositional defiant disorder was performed under Listing 112.08, Personality Disorder, and the evaluation for the minor child's ADHD was performed pursuant to Listing 112.11. (Tr. 261-262). Listing 112.08 requires medical evidence of a personality disorder that is manifested by pervasive, inflexible, and maladaptive personality traits, which are typical of the child's long-term functioning and not limited to discrete episodes of illness. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.08. Additionally, the required level of severity for this disorder is met when the requirements of both A and B of Listing 112.08 are satisfied.[2] Listing 112.11 requires a finding that ADHD is manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.11. The required level of severity for ADHD is met when the criteria of both A and B of the listing are satisfied. This requires medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity, as well as a condition resulting in at least two of the appropriate age group criteria in paragraph B2 of Listing 112.02, as described in footnote two below.

The record does not contain the necessary medical findings to support the criteria to meet or medically equal Listing 112.08 or Listing 112.11. The medical evidence concerning these

---

[2] Part A requires medical evidence of deeply ingrained, maladaptive patterns of behavior, associated with one of the following: (1) Seclusiveness or autistic thinking; or (2) Pathologically inappropriate suspiciousness or hostility; or (3) Oddities of thought, perception, speech, and behavior; or (4) Persistent disturbance of mood or affect; or (5) Pathological dependence, passivity, or aggressiveness; or (6) Intense and unstable interpersonal relationships and impulsive and exploitative behavior; or (7) Pathological perfectionism and inflexibility. 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.08(A). Part B requires medical evidence of a condition resulting in at least two of the appropriate age-group criteria in paragraph B2 of Listing 112.02 for organic mental disorders, which include the following: (a) Marked impairment in age-appropriate cognitive/communication function documented by medical findings, including, if necessary, the results of appropriate standardized psychological tests; or (b) Marked impairment in age-appropriate social functioning, documented by history and medical findings, including, if necessary, the results of appropriate standardized tests; or (c) Marked impairment in age-appropriate personal functioning, documented by history and medical findings, including, if necessary, appropriate standardized testing; or (d) Marked difficulties in maintaining concentration, persistence, or pace. 20 C.F.R. pt. 404, subpt. P, app. 1, § 112.08(B).

conditions comes from psychiatrist  Dr. Roger House M.D., who diagnosed D.T.H with ADHD in an August 23,  2002 report (Tr. 506 - 508)  and  oppositional defiant disorder in a February 27, 2004 report.  (Tr. 445).   Dr. House's  medical records do not provide the necessary medical findings to support the criteria to meet or medically equal Listing 112.08 or Listing 112.11.  (Tr. 444-445, 465, 505-508). The records indicate  Dr. House performed one in depth examination of D.T.H during the initial  evaluation  performed  on  August  23,  2002  and  then  only  saw  D.T.H.  for  medication management.   (Tr. 444-445, 465, 505-508).   Dr. House's records suggest the type and dosage of medication (54 mg of Concerta) to be sufficient in treating D.T.H.'s conditions.  The prescription remained  unchanged  from  at  least  April  2004  until  August  2006.   (Tr. 444-445, 465, 505). Additionally, in January and April 2004, Dr. House's records indicate D.T.H. was doing well.  (Tr. 444-445).   Dr. House's records do not contain medical findings of marked inattention, marked impulsiveness, and marked hyperactivity as required in Listing 112.11, nor do the records contain medical  findings  of a personality disorder manifested by pervasive, inflexible, and maladaptive personality traits as required in Listing 112.08.

D.T.H. underwent a consultative psychological examination on April 13, 2004, by Dr. Tom Wright.   The results of the examination support the ALJ's finding that D.T.H. did not meet or medically equal Listings 112.11 or 112.08.  (Tr. 439-443).  In his report, Dr. Wright found D.T.H. had exhibited concentration problems since kindergarten, but he had only recently started taking medication. (Tr. 439).  During the examination, D.T.H. cooperated fully and displayed no aggressive or problematic behavior.  (Tr. 439).  Dr. Wright reported D.T.H. was within the lower limits of the normal range of intelligence.  (Tr. 441).  Dr. Wright also found D.T.H. communicated effectively; worked at a reasonably efficient pace; and his concentration and persistence were "surprisingly

good" given his diagnosis.  (Tr. 441-442).

I find substantial evidence supports the ALJ's finding that D.T.H's oppositional defiant disorder and ADHD did not meet or medically equal  Listing 112.08 and 112.11.

The ALJ found D.T.H.'s impairments did not functionally equal the requirements of a listing. In order to functionally equal a listed impairment, the child's impairment must result in marked limitations in two domains of functioning, or an extreme limitation in one domain.  *See* 20 C.F.R. § 416.926a(a).  A marked limitation seriously interferes with the ability to engage in or complete domain-related activities, while an extreme limitation very seriously interferes with domain related activities.  *See* 20 C.F.R. § 416.926a(e).  The relevant domains of functioning are: (1) Acquiring and Using Information; (2) Attending and Completing Tasks; (3) Interacting and Relating With Others; (4) Moving About and Manipulating Objects; (5) Caring For Yourself; and (6) Health and Physical Well-being.  *See* 20 C.F.R. § 416.926a(b)(1).

In the domain of "Acquiring and Using Information," the analysis is based on how well a child acquires and learns information, and how well the child uses the information once learned.  *See* 20 C.F.R. § 416.926a(g).  The reports of Dr. House, Dr. Wright, and testing by the Texarkana Arkansas School District all indicated and supported the finding that D.T.H possessed average intellectual functioning.  (Tr. 332-336, 441, 508).  Although D.T.H.  was placed in resource class in some subjects, he had not been retained in any grade, and was  functioning near grade level in most of his subjects.  (Tr. 404-406, 413, 481, 514).  Further, the State Agency medical consultants, who conducted the Childhood Disability Evaluation on April 23, 2004 and July 21, 2004, found D.T.H. had less than marked limitation in this domain.  (Tr. 452, 459).

The ALJ found D.T.H had a less than marked limitation in the domain of "Acquiring and Using Information."  I find substantial evidence supports this finding.

In the domain of "Attending and Completing Tasks," the analysis is based on an assessment of how well a child is able to focus and maintain attention, and how well a child begins, carries through, and finishes activities. *See* 20 C.F.R. § 416.926a(h).  Reports from D.T.H's first and second grade teachers indicate he is able to function adequately when on proper medication.  On October 24, 2003, D.T.H's first grade teacher, Ms. Pam Gideon, stated in a note that D.T.H. had a very hard week and  his behavior had been "totally out of character."  (Tr. 414).  However, she also noted  it was her understanding D.T.H's prescription had been lost at the pharmacy and  he was not on his medication at this time.  (Tr. 414).  Ms. Gideon also reported in a March 2004 school questionnaire that D.T.H. had no problems concentrating on school work, working independently or staying on task, concentrating on things of interest, or completing assignments on time.  (Tr. 404-405, 501-502).  Ms. Gideon was of the opinion  D.T.H. functioned to the best of his ability while on medication.  (Tr. 404).

D.T.H.'s  second grade teacher, Ms. Lori Redfearn, stated  in a September 10, 2004 note, that on a normal day D.T.H. was a sweet, attentive, and polite young man, but on the days he did not take his medications, he could not sit, focus or listen and was in constant motion.  (Tr. 413).   On April 17, 2003,  the Texarkana Arkansas School District conducted a  comprehensive evaluation of D.T.H.  According to the report, D.T.H. was cooperative and completed all tasks presented.  (Tr. 333).  Dr. Tom Wright conducted a  psychological consultative examination on D.T.H. in July 2004.  Dr. Wright was of the opinion D.T.H's concentration and persistence were surprisingly good given the diagnosis of ADHD, and D.T.H. worked at a reasonably efficient pace during the examination.  (Tr.

14

442).

The ALJ found D.T.H had a less than marked limitation in the domain of "Attending and Completing Tasks." I find substantial evidence supports this finding.

In the domain of "Interacting and Relating With Others," the analysis is based on an assessment how well the child initiates and sustains emotional connections with others, including the development and use of language, cooperating with others, complying with rules, responding to criticism, and respecting the possessions of others. *See* 20 C.F.R. § 416.926a(I). D.T.H. exhibited behavior problems and could be defiant and refuse to follow instructions at school; however, the evidence indicates these behavioral problems appeared to be well controlled when D.T.H. was taking the appropriate medication. (Tr. 404-406, 413-414). D.T.H's first grade teacher, Ms. Gideon, reported on March 17, 2004, that D.T.H. functioned appropriately when on medication and had no problems making or keeping friends. (Tr. 404- 405). Ms. Gideon also reported D.T.H. had no problems with social functioning or with his behavior while on his medication. (Tr. 404-405). As noted above D.T.H's second grade teacher, Ms. Redfearn, indicated in a September 2004 note that on a normal day, D.T.H. was a sweet, attentive, and polite young man, but on the days he did not take his medications, he could not sit, focus or listen and was in constant motion. (Tr. 413).

The ALJ found D.T.H had a less than marked limitation in the domain of "Interacting and Relating With Others." I find substantial evidence supports this finding.

In the domain of "Moving About and Manipulating Objects," the analysis is based on an assessment of the child's gross motor skills. *See* 20 C.F.R. § 416.926a(j). There was no evidence of D.T.H. having any documented physical limitations. The ALJ found D.T.H had no limitations

in the domain of "Moving About and Manipulating Objects."   I find substantial evidence supports this finding.

In the domain of "Caring For Yourself," the analysis is based on an evaluation of the child's ability to maintain a healthy emotional and physical state while getting wants and needs met in appropriate ways; coping with stress and changes in environment; and whether the child can take care of his own health, possessions, and living area.  *See* 20 C.F.R. § 416.926a(k).  Plaintiff reported D.T.H. was able to care for his personal needs.  (Tr. 390).  Additionally, there is no evidence of D.T.H. having any limitations in this domain.  The ALJ found D.T.H had no limitations in the domain of "Caring For Yourself."   I find substantial evidence supports this finding.

In the domain of "Health and Physical Well-being," the analysis is based on an assessment of the cumulative effects of any physical and mental impairments, and any associated treatments or therapies on the child's functioning.  *See* 20 C.F.R. § 416.926a(l).  In this domain, a "marked" limitation will be found if a child experiences an exacerbation of symptoms on an average of at least three times per year, or once every four months, with symptoms during each occurrence lasting for two weeks or more.  A "marked" limitation will also be found if a child experiences symptoms that occur more often than three times a year or once every four months, but do not last two weeks at a time, if the overall effect is equivalent in severity.

The medical evidence of treatment for D.T.H's conditions during the period before and after the Court's remand is minimal (Tr. 174- 175, 432-438, 444-445, 449, 465, 505-508), and a complete review of the record shows D.T.H. did not require extensive medical treatment or extended inpatient hospitalization due to an acute exacerbation of symptoms related to any physical or mental condition.

16

D.T.H's asthma, ADHD, and oppositional defiant disorder were reasonably controllable on proper medication.

The ALJ found D.T.H had a less than marked limitation in the domain of "Health and Physical Well-being."  I find substantial evidence supports this finding.

## 4. Conclusion:

The Court has reviewed all of the relevant medical records and briefing in this case. After a careful review of the entire record, this Court finds there is substantial evidence to support the decision of the ALJ.  Accordingly, the Commissioner's decision should be affirmed, and the Plaintiff's complaint dismissed with prejudice.  A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED** this **21st day of November, 2007.**

/s/  Barry A. Bryant
HON. BARRY A. BRYANT
U. S. MAGISTRATE JUDGE

17